PAGE & BACON, Defendants in Error, *vs.* LATHROP, Plaintiff in Error.

1. Possession by the endorser of a dishonored bill of exchange is evidence sufficient to enable him to maintain an action thereon, though at the same time there appears upon the bill an endorsement in full from him to another party.
2. Although a bill purports to have been drawn by an agent under a special written authority, other evidence is admissible to establish his authority, so as to relieve him from personal liability on the bill, as a person acting without authority.  (SCOTT, J., dissenting.)
3. Can a payee, who receives a bill, drawn by an agent in the name of his principal under a written authority shown to him at the time, afterwards charge the agent as principal, as having drawn without authority ?

*Error to St. Louis Court of Common Pleas.*

Page & Bacon sued Lathrop as the drawer of a draft on David Green, of Baltimore, for $1000, dated December 18, 1849, *at twenty days' date,* payable to their order, and signed

" Green & Co., by H. F. Lathrop, agent." In the body of the draft was the following memorandum : " *This draft being drawn on your letter of credit to me, dated Baltimore, November, 30, 1849.*" It was endorsed as follows : " *Pay Samuel Harris & Sons, or order, without recourse on us. Page & Bacon.*"

The plaintiffs alleged in their petition that the defendant drew the bill without due authority. The letter of November 30, 1849, referred to in the bill, contained the following clause : " *You must not let one of our drafts come back upon any account, and can draw upon here at twenty days' sight at all times, when for our benefit.*"

The defendant then offered to show that he was the agent at St. Louis of Green & Co., who were the proprietors of an express from Baltimore and New York to the western cities ; that Green, one of the members of the firm, resided in Baltimore, and Jones, the other member, at Cincinnati ; and that he, as their agent, had general authority to draw bills on Baltimore or Cincinnati to meet drafts on him ; that the bill sued upon was drawn to meet other drafts of Green & Co. upon him, which he had not sufficient funds in his hands to meet ; and that he was instructed by a letter dated *Cincinnati*, November 30, 1849, not to suffer any drafts of Green & Co. to go back protested, and authorized to draw at fifteen or thirty days' date, if necessary, to protect the credit of the house. All this evidence was excluded by the court below, and the jury were instructed that, as the letter, by authority of which the bill purported to be drawn, did not authorize it, the defendant was liable as principal. Two instructions asked by the defendant were refused, and after judgment against him, he sued out this writ of error.

*B. A. Hill*, for plaintiff in error, among other points, made the following : 1. It was a question of fact for the jury, whether the letter, referred to in the body of the bill, authorized the drawing of such bill. ( *Taylor* v. *Labeaume*, 14 Mo. Rep. 572. 19 Ala. 165. 20 Ala. 313. ) 2. The court erred in holding that the defendant could not show his authority by any

Page & Bacon *v.* Lathrop.

other evidence than the letter referred to in the body of the bill. (*Mechanics' Bank* v. *Bank of Columbia*, 5 Wheaton, 326. 3 Cranch, 415. 1 Wash. C. C. R. 174. Story's Agency, §270. 17 Wend. 40. Cow. & Hill's Notes, Phill. Ev. 3 vol. 1464 and 5. 19 Johns. Rep. 60. 9 Id. 334. 13 Id. 307. 10 Wend. 275. 8 Pick. 56–61. 12 Mass. 173.) 3. The plaintiffs were bound to know the extent of Lathrop's authority. and cannot now be heard to deny it. (1 Pet. 290. Walk. Ch. Rep. 214. 12 Smedes & Marsh. 398. Story's Agency, §72, §81, §265.) 4. The plaintiffs are not now the legal holders of the bill. It belongs on its face to Harris & Sons. 5. The defendant cannot be sued as the drawer of the bill, which, upon its own face, is the bill of Green & Co. If an agent exceeds his authority, he must be sued for fraud and deceit and not as a party to the bill. (*Ballou* v. *Talbot*, 16 Mass. 461. *Long* v. *Colburn*, 11 Id. 97. *Johnson* v. *Smith*, 21 Conn. 627. 12 Eng. Law and Eq. 430. Note to *Thompson* v. *Davenport*, 2 Smith's Lead. Cases, 223.)

*Knox & Kellogg*, for defendants in error. 1. There was no necessity for a re-indorsement of the bill, to enable the plaintiffs to maintain a suit upon it. (*Dugan* v. *The United States*, 3 Wheat. 172.) 2. It was not competent for appellant to prove any authority to draw the bill, outside of the letter under which, on the face of the bill he claimed to act. (1 Denio, 471. 8 Wend. 494. 2 Ala. 718. Story on Agency, (3d ed.) §76, §264, §166, §169. 1 Greenl. Ev. §275.) 3. The weight of authority is manifestly in favor of the liability of an agent who draws a bill without authority, upon the paper itself, as a party thereto. (Story on Agency, §264. 3 Johns. Cases, 70. 1 Denio, 480. 8 Wend. 494. 4 N. H. 239. 2 Crompt. & Mees. 530. 2 Ala. 718.)

RYLAND, Judge, delivered the opinion of the court.

This case presents two or three important questions which I will state and give our views and opinions thereon. 1. Is the possession by the endorser of a dishonored bill of exchange

evidence sufficient for him to maintain an action thereon, when, at the same time, there appears upon the bill an endorsement in full from such holder to another party?  2. If a bill of exchange purports to have been drawn under a special written authority referred to, can other evidence be gone into, to establish the agent's authority, so as to relieve him from personal liability on the bill, as a person acting for another, without authority?  3. If the payees saw the authority and took the bill under it, can they afterwards deny the authority, and charge the agent as principal for acting without authority?

1. The first question we answer in the affirmative.  The endorser of a dishonored bill being in possession, although there is on the bill an endorsement in full from him to another party, may yet maintain his action thereon.  In support of this doctrine, we refer to the case of *Dugan* v. *United States*, (3 Wheat. 172.)  In this case, the Supreme Court of the United States held that, "if any person, who endorses a bill to another, whether for value or for collection, shall come to the possession thereof again, he shall be regarded, unless the contrary appear in evidence, as the *bona fide* holder and proprietor of such bill, and shall be entitled to recover, notwithstanding there may be on it one or more endorsements in full, subsequent to the one to him, without producing any receipt or endorsement back from either of such endorsees, whose names he may strike from the bill or not, as he may think proper."  In *Warren* v. *Gilman*, (15 Maine, 70,) the same doctrine is held.  In *McGee* v. *Prouty et al.*, (9 Metc. 547,) the same doctrine is held is regard to a promissory note that had been negotiated.  In *Picquet* v. *Curtis*, (1 Sumner's U. S. C. C. Rep. 478,) the same doctrine is held.  (See Story on Prom. Notes, §452.)  In answering, then, the first question stated above, it is the unanimous opinion of this court, that such endorser may now maintain an action under such circumstances.  Such is the modern doctrine of the American courts.

2. In answer to the second question, the majority of the court are of opinion that such other evidence may be gone into,

Page & Bacon *v.* Lathrop.

to show that the agent had authority to draw the bill, although the special instrument referred to on the face of the bill may not give him authority to draw, as he has done. The real question in such a case is, had he the power to draw, and we cannot see why he should be held personally liable, because he, on the face of the bill, refers to power given by letter of a certain date, when there may be no such power in any letter of that date; but there may be general power and authority to draw such bill, by previous letters; that is, we cannot suppose the bare mistake of the agent, in referring to a paper for the proof of his authority, precludes him from proving such authority by any other competent evidence.

This does not, in our opinion, have any thing to do with the doctrine that a special agent must strictly confine himself within the scope of his authority; nor does it take away the personal liability of the agent who acts without authority.

It is a settled doctrine that, where the name of the principal appears on the face of the instrument or contract, and it is evident that the agent did not intend to bind himself personally, but acted merely on behalf of the principal, if he acted by competent authority, the principal and not the agent will be bound. (See *Rathbun* v. *Budlong*, 15 Johns. 1.)

In the case of the *Mechanics' Bank* v. *Bank of Columbia*, (5 Wheat. 337,) Mr. Justice Johnson, in delivering the opinion of the court, says: "It is by no means true, as was contended in argument, that the acts of agents derive their validity from professing, on the face of them, to have been done in the exercise of their agency. In the more solemn exercise of derivative powers, as applied to the execution of instruments known to the common law, rules of form have been prescribed. But in the diversified exercise of the duties of a general agent, the liability of the principal depends on the facts: 1, that the act was done in the exercise, and 2, within the limits of the powers delegated. These facts are necessarily inquirable into by a court and jury, and this enquiry is not confined to written instruments, (to which alone the principle contended for could

apply,) but to any act, with or without writing, within the scope of the power or confidence reposed in the agent.

In *McClung's Ex'rs* v. *Spotwood*, (19 Ala. 165,) the Supreme Court of Alabama held that the question of agency is a matter of fact, which it is the province of the jury to decide upon; and if there is any evidence tending to prove the authority of the agent, it should be left to the jury to determine the sufficiency and weight of that evidence. Dargan, Chief Justice, says: " But in most cases, if not in all, the question of agency is a matter of fact, which it is the province of the jury to determine upon under the instructions of the court, and if the testimony tends to prove that the person acting as agent had authority from his principal to do the act, then it is manifest that the court cannot exclude from the jury the act itself, without overstepping the line of its duty, and assuming to determine a matter which belongs to the jury, to-wit : the authority of the agent to do the act. The correct rule is this, if there is no proof whatever tending to prove the agency, the act may be excluded from the jury by the court ; but if there is any evidence tending to prove the authority of the agent, then the act cannot be excluded from them, for they are the judges of the sufficiency and weight of the testimony." (See also *McMorris* v. *Simpson*, 21 Wendell, 610. *McDonnell* v. *Branch Bank at Montgomery*, 20 Ala. 313.)

It is well settled, if a private agent draw a bill, or enter into any other contract in his own name, without stating that he acts as agent, so as to bind his principal, he will be personally liable. (Chitty on Bills, 36. 5 East, 148. 1 Bos. & Pul. 368. 1 Term Rep. 181.) It is not sufficient to charge the principal, or protect the agent from personal liability, merely to describe himself as agent, if the language of the instrument imports a personal contract on his part. But here the question is, can the agent, who draws a bill, stating on its face that it is drawn by virtue of authority given to him by a letter from the principal, of a certain date, be permitted to show by other evidence than that letter, that he had the power to draw

such bills? Is the agent acting within the limits of the business prescribed? Has the power to draw such bills been given? Can he show that he has authority for the act done? These are the real matters to be regarded, and not the particular mode or way in which the evidence of such power can be offered or allowed.

In the opinion then of Judges Leonard and Ryland, the second question must also be answered in the affirmative. It is a question of authority only, and no rule should limit the proof of such authority to the mode only, or to any one particular instrument of proof alluded to or referred to in the act of the agent. In the opinion, then, of these judges, the judgment must be reversed.

3. In answer to the third question, there is some doubt. Judge Scott is inclined to the opinion that, if the payees, after having had an opportunity of seeing and examining the authority under which the agent draws the bill, and making no objection as to any want of such authority, purchase such bill, they ought not to be allowed afterwards to set up the absence of such power in the instrument referred to, as giving the authority to the agent as a reason why they should hold the agent personally responsible. Judge Leonard gives no opinion on this point, and Judge Ryland is inclined to doubt the propriety of holding the payees bound. However, without wishing to be understood as giving any opinion on that question, either way, and having come to the conclusion that the court below erred in giving the instruction for the plaintiffs, in relation to the second question at the beginning of this opinion, the judgment below is reversed, and the cause remanded; Judge Leonard concurring.

SCOTT, Judge. In my opinion, as the bill was drawn in reference to a special authority, it was not competent to show by parol evidence that there was any other authority to draw it. The expression of one thing is the exclusion of another, and the giving of special authority to draw a particular bill shows

that it was not intended that it should derive its existence from any general authority. An authority to an agent to do a thing at his discretion, cannot stand with an authority to do the same thing in a particular way. These powers must be so construed as to harmonize. That can only be done by making the special an exception to the general power.