INHABITANTS OF FRIENDSHIP

*vs.*

INHABITANTS OF BRISTOL

Knox.      Opinion, January 12, 1934.

*Rodney I. Thompson,* for plaintiff.
*Emerson Hilton, Weston M. Hilton,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

STURGIS, J.   Action on the case for pauper supplies furnished a person found destitute in the town of Friendship. The case is

reported on an agreed statement of facts of which the pleadings are made a part.

The case states that the pauper formerly lived and had a legal settlement in the town of Bristol, but sometime prior to January 1, 1916, came to Friendship and has since "resided" there. He was of age and emancipated when he arrived in that town and during the following years neither directly nor indirectly received any supplies as a pauper until March 9, 1932, when he applied to the overseers of the poor of Friendship and received relief. Due notice alleging that the legal settlement of the pauper was in Bristol was promptly given the overseers of that town, but they denied the settlement and this suit followed.

The facts thus far recited are agreed upon and, on their face, give the pauper a settlement in Friendship. "A person of age having his home in a town for five successive years without receiving supplies as a pauper, directly or indirectly, has a settlement therein." R. S. Chap. 33, Sec. 1, Par. VI. The agreement is that the pauper "resided" in Friendship and that "no pauper supplies had been furnished (him) from the time of his return to Friendship in 1915 until the furnishing of the supplies mentioned in this writ." This is equivalent to an admission that he had his "home" there for "five successive years without receiving supplies as a pauper, directly or indirectly." In the pauper law, "residence" and "home" are used as synonymous terms. *Warren* v. *Thomaston*, 43 Me., 406, 418; *Yarmouth* v. *Gardiner*, 58 Me., 208.

Nor is the force of the admission that the pauper resided in Friendship lost by the fact that the pauper was under guardianship from September 2, 1919, to July 7, 1931. It does not appear upon what grounds a guardian was appointed and, although it may be inferred that he was found to be incompetent to manage his estate, it does not necessarily follow that he was non compos mentis. He may have been rendered incompetent by physical infirmity or have been only a spendthrift exposing himself or his family to want and suffering and his town to expense. A guardian may be appointed on these grounds as well as mental incapacity. R. S., Chap. 80, Sec. 4. But if we assume that he was non compos and under guardianship for that reason, this would not prevent his

acquiring a settlement. A person non compos, of age and emancipated, can acquire a pauper settlement in his own right. *Augusta* v. *Turner*, 24 Me., 112; *New Vineyard* v. *Harpswell*, 33 Me., 193; *Gardiner* v. *Farmingdale*, 45 Me., 537; *Waterville* v. *Benton*, 85 Me., 134, 26 A., 1089. Such a person intentionally kept living for five successive years in a town by his guardian without receiving pauper supplies, directly or indirectly, has his home in that town within the meaning of the pauper statute. *Auburn* v. *Hebron*, 48 Me., 332; *Waterville* v. *Benton*, supra. We find no modification of these rules in any decision of this Court.

The fact that the pauper was described in the guardianship proceedings as "of said Bristol" does not bar proof of where he has in fact lived, nor overcome the admission that he has "resided" in Friendship. *Bangor* v. *Wiscasset*, 71 Me., 535; *McNichol* v. *Eaton*, 77 Me., 246, 251. Nor can weight be attached to the payment of taxes by the pauper. Although he actually resided in Friendship, his land there was assessed to him as a nonresident and he or his guardian paid the taxes. The assessment only represented the opinion of the assessors upon the question of the residence or non-residence of the pauper and is not evidence of the fact itself. *Rockland* v. *Union*, 100 Me., 67, 60A., 705, *Rockland* v. *Farnsworth;* 93 Me., 178, 44A., 681. So far as the reported case shows, the payment of taxes may have been made in ignorance of the form of the assessment. If so, the payment has no significance. If the contrary is true, it is not agreed upon and can not here be assumed or inferred.

In the same category of inconsequence is the description of the pauper as "of Bristol" in a deed given him by Addie Haupt. This recital, standing alone, represents only the opinion of the grantor upon the question of the pauper's residence. We find no ground for treating this as proof of his residence in fact, especially as against towns which were not parties to the instrument. No more effect can be given to the restriction in this deed that the land conveyed can not be sold "without the consent of the town of Bristol." The agreed statement of facts does not show that any responsible officer of Bristol knew of this restriction when made, or that the town is in any way bound by it. Speculation and conjecture as to

the purpose and effect of this provision can not give it probative value.

However, in Sections 29, 30 of R. S., Chapter 33, which directs the overseers of the poor to relieve persons found in their towns and having no settlement therein and authorizes the town incurring such expense to recover the same of the town chargeable with the pauper's support, it is provided that "a recovery in such an action against a town estops it from disputing the settlement of the pauper with the town recovering, in any future action brought for the support of the same pauper." Invoking the aid of this statute, the plaintiff town points out that the case states that at the January Term 1915 of the Supreme Judicial Court for Knox County the town of Friendship recovered judgment against the town of Bristol for supplies furnished this same pauper, and the argument is that the defendant town in this action is barred from disputing the pauper's settlement there, even though in fact, since that recovery, he has acquired a new settlement in the plaintiff town or has lost the settlement which was the basis of the former recovery and judgment.

We are not of opinion that the contention advanced by the learned counsel for the plaintiff town can prevail. The pauper statute is one body of law and all its provisions must be read together. The legislative intent is to be drawn from a consideration of the whole act, and effect must be given, if possible, to every part of it. These are settled rules of statutory construction. *Comstock's Case*, 129 Me., 467, 471, 152A., 618; *State* v. *Frederickson*, 101 Me., 37, 41, 63A., 535; *Merrill* v. *Crossman*, 68 Me., 414.

The statutory estoppel relied upon has existed for more than a century. Chap. 122, P. L., 1821 et seq. But along with it in the first enactment, as in all subsequent revisions, there has been the provision that, although a pauper settlement, legally acquired, remains until a new one is gained, it is defeated by the acquisition of a new settlement, and, by the law in force when this action accrued, that it may be lost as there provided without the acquisition of a new one. R. S. Chap. 33, Sec. 3, as amended by Chap. 124, P. L. 1931, reads:

"Settlements acquired under existing laws, remain until new ones are acquired or until lost under the provisions of this section. Former settlements are defeated by the acquisition of new ones. Whenever a person having a pauper settlement in a town, has lived, or shall live, for five consecutive years in any unincorporated place or places in the state, or five consecutive years outside of the town in which he has a settlement after August one, nineteen hundred twenty-six, without receiving pauper supplies from any source within the state, he and those who derive their settlement from him lose their settlement in such town, and whenever a person having a pauper settlement in any town in the state shall after April twenty-nine,, eighteen hundred ninety-three, live for five consecutive years beyond the limits of the state without receiving pauper supplies from any source within the state, he and those who derive their settlement from him shall lose their settlement in such town."

Under this provision, when a pauper settlement is defeated or lost, it is finally ended and can not be revived. A subsequent settlement in the same town, as in a different one, is a new settlement and is entirely separate and distinct from the old. They can not be deemed the same in fact or in any legal consequence. *Monson* v. *Fairfield*, 55 Me., 117.

We find no reason for assuming that the Legislature, in enacting and continuing in force the statutory estoppel of what is now Section 30, Chapter 33, R. S., either ignored or intended to set aside or modify the general provisions of the statute relating to the acquisition or defeat or loss of pauper settlements. The intention appears only to have been to bar repeated and continuous litigation respecting the same settlement. As was said in an early opinion of this Court, "It was not intended to permit a town, which had commenced an action and been defeated in it, to continue to litigate the same settlement with the same town as often as it pleased, while it failed to obtain a judgment in its favor."*Oxford* v. *Paris*, 33, Me., 180. This, we think, is the full scope and effect of the estoppel. It does not apply to a new and independent settlement acquired subsequent to that upon which the recovery has been had. To

hold otherwise would permit the town having a recovery in a pauper suit to avoid, as in the case at bar, its own responsibility and charge the other town with the support of a pauper for which it is in no way responsible. The presumption is that the Legislature did not intend so unjust a result. *French* v. *Cowan*, 79 Me., 426, 433, 10A., 335; *Landers* v. *Smith*, 78 Me., 213, 3A., 463.

On the facts shown in the agreed statement, when the plaintiff town furnished relief to the pauper in the case at bar, he had lived five consecutive years outside of Bristol after August 1, 1926, without receiving pauper supplies from any source within the state, and had lost his former settlement there. He had also defeated that settlement by acquiring a new one in Friendship. These facts are a defense to this action.

*Judgment for the defendant.*